UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

           Plaintiff,           Case Number 13-20885
v.                                            Honorable David M. Lawson

TONY DEANGELA TURNER,

           Defendant.
_____/

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant Tony Turner has filed a motion asking the Court to reduce his prison sentence to time served under the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. Turner is serving the last few months of a 105-month prison sentence for possessing a firearm as a convicted felon. He argues that his release is justified by extraordinary and compelling circumstances, consisting of a medical condition — obesity — which he contends increases his risk of complications from a possible infection with the COVID-19 disease. Turner's showing of "extraordinary and compelling reasons [that] warrant such a reduction," as section 3582(c)(1)(A)(i) requires, is marginal. Moreover, consideration of the factors in 18 U.S.C. § 3553(a) do not favor release. His motion to reduce his sentence will be denied.

I.

On October 27, 2013, Turner entered a gas station in Detroit, Michigan armed with an assault rifle and a concealed handgun. He ordered the clerk to lock the doors and demanded bullets from him, knowing that the gas station kept a firearm in the clerk's area. The clerk refused. Turner placed the assault rifle on the counter, then he pulled the handgun from his pocket and discharged

it five times at body level.  He shot the gun aimlessly without trying to determine if there were any customers in the store.  The shooting was recorded by the store's surveillance system.

After learning about the incident, police officers executed a search warrant at Turner's residence on November 15, 2013.  The officers found two semi-automatic assault rifles, both of which had large-capacity magazines attached to them.  Officers also found various types of ammunition, a taser, a digital scale, and a .45 caliber Glock magazine.  Turner was charged with illegally possessing those firearms as a convicted felon and pleaded guilty on January 14, 2014.  The Court sentenced him to 105 months in prison on May 15, 2014.

Turner is currently incarcerated at Yazoo City Medium FCI, a medium-security prison in Mississippi.  His projected release date is June 25, 2021. He is eligible for release on home detention in three months.  Turner is 36 years old.

On July 30, 2020, Turner, through counsel, filed a request for compassionate release with the warden of Yazoo City Medium FCI and received confirmation of receipt on August 1, 2020.  He never received a response after that.

The defendant then filed the present motion for compassionate release.  In his motion, Turner argues that he is qualified for release based on medical conditions that have been identified as placing him at elevated risk of complications from a COVID-19 infection.  The government responded and the defendant replied.

Yazoo City Medium FCI, where Turner is held now, currently houses 1,324 inmates, one of which has an active case of COVID-19.  *COVID-19*, Bureau of Prisons (Sept. 25, 2020), https://www.bop.gov/coronavirus/.  Six staff members have active cases reported. *Ibid.* To date, seven other inmates and 10 other staff members contracted COVID-19 and recovered.  *Ibid.* The facility has no recorded deaths.  Yazoo City USP, a high-security facility in the same complex as

Yazoo City Medium, has 19 active cases reported among inmates and seven among staff. *Ibid.* One inmate died, and 69 inmates and 12 staff members recovered. *Ibid.* The complex also includes Yazoo City Low FCI, which has no active cases among inmates but five active cases among staff. *Ibid.* Three inmates have died, and 94 inmates and nine staff members recovered.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). However, prisoners may not seek judicial relief before they have sought release under this statute from the prison warden. "Even though [the] exhaustion requirement does not implicate [the Court's] subject-matter jurisdiction, it remains a mandatory condition," and "[i]f the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only by moving for it on his own behalf. To do that, he must fully exhaust

all administrative rights to appeal with the prison or wait 30 days after his first request to the prison." *Id.* at 833-34 (quotations omitted). The government concedes that the request for release has been properly exhausted, so that threshold requirement for relief has been satisfied.

Under section 3582(c)(1)(A), the Court can order a reduction of a sentence, even to time served, *first*, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," *second*, if "extraordinary and compelling reasons warrant such a reduction," and *third*, if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (en banc) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it").

The government offers several reasons for denying release. It insists that compliance with the Sentencing Commission's policy statement is mandatory, and points to one line in section 1B1.13 that requires the prisoner to prove lack of dangerousness. But that requirement is a condition of 3582(c)(1)(A)(ii). Turner has invoked 3582(c)(1)(A)(i), which contains no such requirement.

That is not to say that dangerousness is irrelevant. It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. *See* 18 U.S.C. § 3553(a)(2)(C) (requiring a sentencing court to consider "the need … to protect the public from further crimes of the defendant"). And any sentence reduction also must account for "the seriousness of the offense," the need "to promote respect for the law,"

and "afford adequate deterrence to criminal conduct." *Id.* § (2)(A), (C). These factors are to be considered together with the prisoner's circumstances to arrive at a conclusion that they are sufficiently extraordinary and compelling to justify a sentence reduction.

Turner's crime, unlawful possession of a firearm, is not a serious offense by itself, relatively speaking. However, the circumstances surrounding the gun possession on this case were grave. Turner possessed two semi-automatic assault rifles, both of which were equipped with large-capacity magazines. Days earlier, he took one of those assault rifles and a loaded handgun and shot up a party store, carelessly discharging the weapon five times inside the store, which was occupied by other people.

Turner's criminal history adds context to the gravity of his crime. This case represents Turner's fifth felony conviction, and his current incarceration is his fourth prison sentence. At least two of his offenses involved firearms. In 2004, Turner was convicted of attempted carrying a concealed weapon, and in 2006, he was convicted of being a felon in possession of a firearm and felony firearm. The 2006 convictions involved a gang-related shootout with assault rifles that resulted in the death of an eight-year-old child. Turner has continued to procure, carry, and use weapons illegally, despite the fact that he unquestionably is barred from doing so by his prior felony convictions. Those circumstances all suggest that the defendant, if released, would pose a very serious danger to the community.

The defendant's record in prison is checkered. He was disciplined three times: twice for fighting (the first incident occurred on April 9, 2014, the second on November 29, 2017) and he also abused his phone privileges on December 25, 2016. He has maintained a clear record since 2017. However commendable Turner's more recent conduct in prison has been, it does not alter the historical fact that the Court imposed a sentence that was not greater than necessary to achieve

congressional goals. Reducing that sentence, even by a few months, would not promote respect for the law or provide a just punishment for the defendant's crime. Nor would it serve as a significant deterrent to others; to the contrary it would undermine the goals of both specific and general deterrence, which is of particular concern with a defendant who repeatedly has shown that he has not been deterred from engaging in violent conduct by the punishments imposed for his previous convictions.

Turner points out that his sentencing guideline range would be lower if he were to be sentenced today. One of his previous convictions no longer would be considered a crime of violence, and therefore his base offense level would not be as high. But although the guideline range must be considered by the Court in fashioning a sentence, the other factors discussed above support the sentence that was imposed in this case.

Consideration of the factors in 18 U.S.C. § 3553(a) weighs against granting a reduction in sentence in this case.

To establish extraordinary and compelling reasons for the relief he requests, Turner points to the conditions of his physical health, arguing that he is vulnerable to complications if he were to contract COVID-19. He documents several medical conditions, but his principal contention is that his obesity is a recognized medical risk factor. His medical records (dated March 5, 2019) indicate that he had a body mass index (BMI) of 30.8 at the time he was sentenced. Now, he reports that his weight has increased to 245 pounds, placing him at a BMI of 31.5. However, his medical records do not indicate his current weight; the most recent reading was from March 2019. His medical records also indicate that he is a former smoker and has had some higher than normal blood pressure readings.

The defendant is justifiably concerned about the health risks posed by his incarceration. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications and death. Because there is no current vaccine, the Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ortiz*, 2020 WL 3640582, at *2 (collecting cases; footnotes omitted).

Turner's medical records indicate that he occasionally has exhibited high blood pressure, commonly referred to as hypertension. The CDC states that individuals with hypertension "*might* be at an increased risk for severe illness from COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (emphasis added). Drilling down, though, that condition is grouped with "serious heart conditions" that predispose a

person to higher risks of complications. Also included are "heart failure, coronary artery disease, congenital heart disease, cardiomyopathies, and pulmonary hypertension." *At Higher Risk for Severe Illness*, Centers for Disease Control and Prevention (May 14, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. Although the CDC recognizes "pulmonary hypertension" as a serious heart condition that may put people at a higher risk of severe COVID-19-related complications, Turner's medical condition does not include him in the high-risk designation. *See, e.g., Pulmonary Hypertension-High Blood Pressure in the Heart-to-Lung System*, American Heart Association, https://www.heart.org/en/health-topics/high-blood-pressure/the-facts-about-high-blood-pressure/pulmonary-hypertension-high-blood-pressure-in-the-heart-to-lung-system (last visited Sept. 28, 2020) (comparing pulmonary and systemic blood pressure). Whether systemic hypertension, alone, exposes someone to heightened risk is unclear. *Compare Malam* --- F. Supp. 3d ---, 2020 WL 2468481, at *7 (ordering supplemental briefing) *with Perez-Perez v. Adducci*, --- F. Supp. 3d ---, No. 20-10833, 2020 WL 2305276, at *3 (E.D. Mich. May 9, 2020) (granting petition for habeas corpus because defendant had hypertension and was housed in a facility with a confirmed case of COVID-19).

That leaves one risk factor — obesity — to support his assertion that extraordinary and compelling reasons justify a sentence reduction. Sometimes that can qualify, "but not usually." *United States v. Ball*, No. 14-20117, 2020 WL 4816197, at *6 (Aug. 19, 2020). The recent cases where inmates have been granted judicial relief on motions for compassionate release due to the pandemic generally involve defendants with documented severe, chronic, or terminal conditions that could warrant release even in the absence of a pandemic, or severe medical conditions that placed them at high risk of coronavirus complications. *E.g., United States v. Reads*, No. 16-

20827, 2020 WL 2572280, at *3 (E.D. Mich. May 21, 2020) (ordering compassionate release of 33-year-old inmate with severe obesity, severe obstructive sleep apnea, hypertension, and "prediabetes"); *United States v. Saad*, No. 16-20197, 2020 WL 2065476 (E.D. Mich. Apr. 29, 2020) (ordering compassionate release of inmate who had served 33 months of a 72-month sentence for a non-violent drug offense, was 71 years old, and suffered from medical conditions including kidney disease, hypertension, pulmonary hypertension, sleep apnea, shingles, diabetes, back problems, a frozen thigh from an overdose of coumadin given by prison officials, and who also had a history of heart surgery and knee replacement, and a recent diagnosis of kidney cancer); *United States v. Nazzal*, No. 10-20392, 2020 WL 3077948 (E.D. Mich. June 10, 2020) (ordering compassionate release of 65 year old defendant with a history of heart disease, severe asthma, benign prostate cancer, high blood pressure, type 2 diabetes, who served 69% of his sentence for a non-violent fraud offense, had only one minor disciplinary incident, and was housed at a facility with several confirmed COVID-19 cases); *United States v. Jajun Omar Gardner*, No. 14-20735, 2020 WL 4200979, at *5 (E.D. Mich. July 22, 2020) (ordering compassionate release where defendant reported a number of serious medical issues, many of which the government did not dispute, including a history of hypertension, a heart condition, stage-two kidney disease, hyperlipidemia, lumbar disc disease, lumbar herniation, spinal cord impingement, an artificial knee joint, an artificial shoulder cup, and sickle cell trait).

By comparison, Turner's own medical condition does not meet the extraordinary-and-compelling threshold. He has only one condition recognized by the CDC as increasing his risk of severe COVID-19 infection and that condition is not well documented. His current weight, for instance, is established only by his own self-report. By all accounts, he is a healthy young man with no reported ailments.

Moreover, the probability that the defendant may be exposed to the coronavirus in his present situation is relatively low. Yazoo City Medium FCI has only one active case of COVID-19 among inmates. There are six staff members with reported infections, but presumably they are not permitted to report to work. The low-and high-risk institutions in the same complex have report more infections, but there is no evidence suggesting that staff or inmates in those facilities comingle with the population of Yazoo City Medium FCI.

On similar facts, the Court has denied motions for compassionate release by inmates with obesity and ordinary hypertension as their only potential risk factors who were housed at facilities with no active coronavirus infections among inmates. *Ball*, 2020 WL 4816197, at *6. There are no distinguishing facts in this case that set it apart from *Ball*, where the Court concluded that extraordinary and compelling circumstances had not been demonstrated.

None of this is to minimize the seriousness of the coronavirus pandemic or the alarming rapidity of its spread within federal prisons. But the pandemic is a global phenomenon and some risk is inherent no matter where Turner resides, either at home or in prison. He asserts that his risk would be lower at home, but he has not put forth any convincing evidence to demonstrate that he is at an especially elevated risk of harm in the present situation of confinement. And Detroit has a significant number of confirmed COVID-19 cases.

Turner has not established extraordinary and compelling reasons based on his physical health, and when the factors in section 3553(a) are "considered," Turner has not shown justification to reduce his sentence to time served.

III.

Turner has exhausted his administrative remedies, but he has not demonstrated that compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) is justified.

- 11 -

Accordingly, it is **ORDERED** that the defendant's motion for compassionate release (ECF No. 43) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   September 28, 2020